Eliot W. DENAULT, Jr.

v.

F. Gavin FITZGERALD et al.

No. 90–368–M.P.

Supreme Court of Rhode Island.

June 27, 1991.

Robert D. Fine, Daniel J. Murray, Licht & Semonoff, Providence, for plaintiff.

G. Quentin Anthony, Sheffield & Harvey, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on a petition for writ of certiorari seeking reversal of a Superior Court judgment affirming the Jamestown Board of Assessment Review.

On May 24, 1989, Eliot W. Denault, Jr. (Denault), purchased approximately two acres of unimproved land in Jamestown, Rhode Island. This property, designated as lot No. 84 and a portion of lot No. 137 on Jamestown Tax Assessor's Plat No. 12, comprised a portion of the W. Redwood Wright estate. Prior to the conveyance the Wright estate exceeded ten acres in the aggregate and had been classified by the Jamestown tax assessor as open-space land under the provisions of G.L.1956 (1988 Reenactment) § 44–27–5.

On June 12, 1989, Denault filed an application for the continuation of the open-space land classification pursuant to § 44–27–9. The tax assessor denied the application and imposed the land-use-change tax pursuant to G.L.1956 (1988 Reenactment) § 44–5–39.

On June 30 Denault appealed the tax assessor's decision to the Jamestown Board of Assessment Review (board) pursuant to § 44–27–5. A hearing was held before the board on August 11, 1989. At the hearing Denault offered the testimony of Linda Steere (Steere), an environment and wetlands consultant. Steere testified that she had personally observed the property and had also viewed aerial photographs of the site. Based on her observations, Steere concluded that Denault's parcel qualified as open-space land under § 44–27–2(c)(2).

At the conclusion of Denault's presentation of evidence, the board offered the sole testimony of the tax assessor, Susan Brayman (Brayman). Rendering a decision on August 12, the board affirmed the decision of the tax assessor and held that the parcel in its entirety did not substantially meet the requirements of § 44–27–2(c)(2).

Denault filed an appeal to the Superior Court pursuant to § 44–27–6, seeking a reversal of the board's decision. On June 27, 1990, the trial justice, after reviewing the transcript of the hearing before the board and memorandums of counsel, determined that Denault was not entitled to a continuance of the open-space classification of his land. The trial justice further concluded that there was no factual evidence to support Steere's conclusion that by virtue of the wetlands, Denault's parcel independently qualified for the open-space land classification under § 44–27–2(c)(2). The trial justice elaborated:

"There is no merit to plaintiff's contention that he is entitled to automatic continuance of the open space classification under § 44–27–9. The statute is inapplicable to transfer of ownership of anything less than the whole tract which previously enjoyed the classification. And while plaintiff's expert gave both written and testimonial opinion evidence that the two acre parcel here qualified for open space classification under § 44–27–2(c)(2), there was no factual evidence to support the expert's conclusion. The

facts do establish the parcel did not meet the requirements of (ii) and (iii)."

A judgment on the decision was entered on June 29, 1990. The plaintiff filed a petition for writ of certiorari to this court, which was granted on October 12, 1990.

On appeal Denault contends that the trial justice erred in affirming the decision of the Board of Assessment Review on the basis that the board's conclusions were erroneous in view of the evidence presented at the hearing.

Any analysis concerning the issues in this appeal necessarily begins with a proper understanding of the relevant statutes. Section 44–27–9 governs the procedure for continuance of open-space land classifications and provides:

"Upon the change of ownership of title, as recorded in the land evidence records of the city or town, of land previously classified as farm, forest, or open space land, the assessor of the city or town where the land is located shall notify the new owner that the land has been classified as farm, forest, or open space and that land withdrawn from that classification is subject to the land use change tax provided for in § 44–5–39. The new owner may apply to the local assessor for continuance of classification and special assessment as provided in § 44–5–12. Upon certification by the new owner that the land continues its use as farmland, its management as forest land or its preservation as open space land, the *assessor shall continue it as that on the assessment list* and notify the director of environmental management of the change in ownership." (Emphasis added.)

■ At the outset, we must agree with the trial justice that § 44–27–9 does not entitle Denault to an automatic continuance of the open-space classification. However, it does not necessarily follow that this statute is inapplicable to the transfer of anything less than the whole tract that previously enjoyed the classification. The statute makes no mention of whether the transfer must include the entire tract. Neither does it seem necessary to infer

such legislative intent when the language of the statute is plain and unambiguous. The pertinent language of § 44–27–9 is as follows: "Upon certification by the new owner that the land continues its use * * * as open space land, the assessor shall continue it as that on the assessment list." It is our view, therefore, that § 44–27–9 confers no discretion to the tax assessor but simply directs the assessor to continue a designated land classification upon certification by the new owner that the transferred land has retained its prior designation.

■ Applying these principles to the case at bar, if Denault demonstrated that his newly acquired parcel, which had previously been classified as open-space land pursuant to § 44–27–5, continued to satisfy the definition of open-space land, then the tax assessor was statutorily obligated to continue the parcel's classification as open-space land. Section 44–27–2(c) defines open-space land as any tract or tracts of undeveloped land that fit into one of the following two classifications:

"(1) Ten (10) acres or larger * * *"

[or]

"(2) Tracts of land of any size:

(i) That have an average slope exceeding eight percent (8%) and which is subject to erosion or mass movement and not part of an existing or planned development; or

(ii) That have a one percent (1%) or greater chance of flooding in any given year; or

(iii) That meet the criteria of fresh water wetlands as defined in chapter 1 of title 2; or

(iv) That meet the criteria of salt marshes and coastal wetlands as defined in chapter 46.1 of title 11 and chapter 1 of title 2; or

(v) That are necessary as buffer strips to protect surface water bodies from erosion or pollution from runoff or lechate; or

(vi) That are ground water aquifer recharge areas as described on the ground water maps of the U.S. geological survey and the Rhode Island water resources

board, providing that these areas have been designated on the basis of hydrogeological data; or

(vii) That have unstable geologic features; or

(viii) That are barrier beaches, dunes, cliffs, ledges, or bluffs, subject to rapid deterioration through the action of wind or wave; or

(ix) That are designated as open space land on the comprehensive community plan; or

(x) That other significant or unique natural areas such as rare or valuable ecosystems, biological features or geological features, or areas designated or regulated as such by the state, federal, or local government or non-profit organizations of recognized competence."

It is clear from the record that Denault's parcel had previously qualified as open-space land under § 44–27–2(c)(1) since it comprised an undeveloped tract of land with more than ten acres. It is equally clear that this parcel, in view of its small acreage, could no longer qualify as open-space land under § 44–27–2(c)(1). Nevertheless, Denault was afforded the right under § 44–27–9 to continue the open-space classification, contingent on his ability to demonstrate that his parcel otherwise qualified as open-space land under § 44–27–2. Denault exercised this right at the hearing before the Board of Assessment Review where he presented the testimonial evidence of Steere, an environment and wetlands consultant. She testified that Denault's parcel, although comprising fewer than ten acres, nevertheless fit within the definition of open-space land as defined in § 44–27–2(c)(2). She stated that a large wetland with an intermittent stream made up a large percentage of Denault's parcel. She estimated that the wetlands constituted 60 to 70 percent of the parcel. Relying on this finding, Steere determined that the

existing wetlands satisfied the criteria of fresh-water wetlands as defined by the Freshwater Wetland Act, G.L.1956 (1987 Reenactment) § 2–1–20.[1] Consequently Steere concluded that Denault's parcel fit within the definition of open-space land under § 44–27–2(c)(2)(iii).

Steere also recognized that the shoreline of Denault's parcel is within a federally defined 100–year flood plain, thus posing a 1 percent or greater chance of flooding in any given year. According to Steere, this possibility of flooding satisfied the definition of open-space land under § 44–27–2(c)(2)(ii). She further noted that because the shoreline of the parcel, which abuts the west passage, exhibited erosion and slumping, the Coastal Resources Management Council (CRMC) retained jurisdiction over the shoreline bank, the rock beach, and all areas within 200 feet of the contiguous fresh-water wetland. According to Steere, CRMC normally required buffer zones to protect such coastal features. See § 44–27–2(c)(2)(ii), (vii) and (viii).

The board presented no evidence to refute or to rebut Steere's opinions. Although the tax assessor, Brayman, testified, she did not dispute any of Steere's findings but merely expressed her opinion:

"I didn't feel that I could accept this two-acre parcel. I thought that there were many sites throughout the Town of Jamestown that could probably meet the same criteria as this site and that it would open up a can of worms to accept it as open space."

The trial justice, upon reviewing the evidence, is guided by the standards of review set forth in § 44–27–6(c), which provides:

"The court shall not substitute its judgment for that of the board * * * as to the weight of the evidence on question of fact. The court may affirm the decision

---

1. We recognize that the subject parcel (slightly larger than two acres) could not qualify as a "[s]wamp" pursuant to G.L.1956 (1987 Reenactment) § 2–1–20(h) because a swamp must be greater than three acres. Nevertheless, in light of Steere's testimony and the board's finding that Denault's parcel is approximately 60 percent wetland, the parcel probably qualifies as a "[m]arsh" pursuant to § 2–1–20(f), which provides that a marsh "shall be a place not less than one acre." In light of the evidence, Denault's parcel, contrary to the conclusions of the Board of Assessment Review and the trial justice, satisfies the criteria of fresh-water wetlands pursuant to chapter 1 of title 2.

of the board * * * or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:

> \*    \*    \*    \*    \*    \*

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The only evidence before the board was Denault's expert witness who testified that the land did qualify as open-space land pursuant to § 44–27–2(c)(2). Absent evidence to the contrary, Denault, in our view, demonstrated with a preponderance of the evidence that the tax assessor's designation was erroneous.[2]

Moreover, there is nothing in the record to suggest that the testimony of the environment and wetlands expert was inaccurate or unreliable. Nevertheless, the board apparently ignored the evidence for fear of the repercussions associated with the granting of an open-space classification to a parcel of land comprising fewer than ten acres. Because it failed to give proper effect to the language of § 44–27–2(c)(2), the board's decision was arbitrary and characterized by an abuse of discretion. More significantly, this abuse of discretion prejudiced the rights of the plaintiff. Consequently, in light of the evidence and the standards of review set forth in § 44–27–6, the plaintiff was entitled to reversal of the decision of the Board of Assessment Review.

For these reasons the petition for certiorari is granted, the judgment of the Superior Court is reversed and the papers of the case are remanded to the Superior Court with our decision endorsed thereon.

---

**2.** General Laws 1956 (1988 Reenactment) § 44–27–5 governs appeals to the Board of Assessment Review. Subsection (d) sets forth the petitioner's burden of proof for overturning the tax assessor's designation and provides in relevant part:

> "Any landowner aggrieved by:
> (1) The denial of an application * * *
> (2) * * * shall have the right to file an appeal * * *.
> "The board of assessment review * * * shall not disturb the designation of the [tax assessor] issued pursuant to subsection (a) hereof, unless the [denied applicant] shall have

shown by a preponderance of the evidence that that designation was erroneous."

Section 44–27–5(d) actually provides: "The board * * * shall not disturb the designation of the director issued pursuant to subsection (a) hereof, unless the tax assessor shall have shown by a preponderance of the evidence that that designation was erroneous." As written, the placement of "director" and "tax assessor" is obviously incorrect and unintended by the Legislature. Therefore, we have necessarily substituted those terms to accord the statute its proper and effective meaning.