George R. NUNES et al.

v.

Angelo MARINO et al.

No. 95–556–M.P.

Supreme Court of Rhode Island.

Feb. 27, 1998.

Neil P. Galvin, Newport, for Plaintiff.

Lauren E. Jones, Providence, Anthony Di-Sisto, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

BOURICER, Justice.

This case concerns a dispute over the appropriate land use change tax applicable

when farmland is withdrawn from the State of Rhode Island's Farm, Forest, and Open Space Program. The petitioner, Angelo Marino, in his official capacity as the Chairman of the town of Warren's Tax Assessment Board of Tax Review, seeks this Court's review of a final judgment of the Superior Court striking down the imposition of a $239,750 land use change tax upon the defendants, George R. Nunes and his wife, Margaret M. Nunes, (the Nuneses). We reverse the judgment of the Superior Court.

I

Facts and Procedural History

From 1946 until 1987 the Nuneses owned and farmed three tracts of land in the town of Warren. In 1983 the town of Warren undertook to revalue all land within its borders in order to reflect current real estate market value and to apportion fairly the tax obligations of its town property owners. As a result of that revaluation the Nuneses' property valuation assessment was increased from $28,250 to $256,100, and their tax liability thereon increased from $2,244.97 to $6,273.18.

The Nuneses then, pursuant to G.L.1956 § 44–27–3, sought to have their property classified as farmland and entered into the Farm, Forest, and Open Space Program (program), a state initiative designed to promote the preservation of undeveloped land as well as to preserve lands currently being used as farmland. Property classified as farmland pursuant to this state program would presumptively be assessed at much less than full and fair cash value. As a result the landowner would receive the benefit of reduced property tax liability.

In order to obtain the desired farmland classification, the Nuneses, pursuant to § 44–27–3, submitted an application for designation to the Rhode Island Department of Environmental Management (DEM) in July of 1984, seeking the director's designation of their property as farmland. Following an inspection of the property, the DEM approved the Nuneses' application, and their land was thereafter formally designated farmland in the state program. Under the statutory scheme established by the General Assembly, the Nuneses were then permitted to apply to the tax assessor of the town in which their land was located to obtain local recognition of their property's classification and favorable tax treatment.

Although it is unclear whether such a formal application was ever made to the local assessor in this case, it is evident from the local assessment records that the town of Warren did recognize and accept the Nuneses' property into the state farmland program and awarded the Nuneses an advantageous property valuation. In fact the town revalued the Nuneses' farmland, and their property's assessed valuation was reduced to $129,200. This valuation resulted in a substantial tax savings to the Nuneses over the next three tax years.

In 1987 the Nuneses entered into a purchase and sales agreement with a developer, Dennis Gray (Gray), wherein Gray agreed to purchase the Nuneses' farmland for $3,126,000. The agreement, however, was conditioned upon the rezoning of the Nuneses' farmland to permit planned residential unit development (PUD). In anticipation of this impending change in use, the Nuneses' attorney sent a letter to the town of Warren on December 9, 1987, notifying the town of the withdrawal of the Nuneses' land from its farmland classification because it was no longer to be utilized as farmland.

In response to the letter of December 9, the town tax assessor then informed the Nuneses that their property would now become subject to a land use change tax pursuant to G.L.1956 § 44–5–39. This tax is automatically required whenever a landowner voluntarily removes his or her property from the state classification program.[1] Before computing the land use change tax to be levied against the Nuneses' property, the

---

1. Not all land withdrawn from classification is subject to the land use change tax. General Laws 1956 § 44–5–39(b) provides that farmland that is owned by the taxpayer and farmed for more than five years prior to classification is subject to no tax after ten years of classification. Section 44–5–39(a) provides that all other classified lands are free from land use change taxation following the fifteenth year of classification.

town tax assessor first revalued the property to reflect its current fair market value, taking into consideration the agreed upon sale price of $3,126,000. Then, after applying the appropriate statutory formula set out in § 44–5–39(b), the tax assessor determined that a land use change tax of $239,750 was due. The Nuneses disputed the amount of the tax.

Despite their disagreement with the tax assessor's computation of the land use change tax, the Nuneses, on June 28, 1988, loath to impede the profitable sale of their PUD-zoned land, paid the assessed land use change tax under protest. On that same day the sale of the land to Gray was successfully completed.

Subsequent to the sale of their land, the Nuneses filed an appeal with the town's Tax Assessment Board of Tax Review (board), challenging the revaluation of their property. This appeal was summarily denied by a letter from the board dated January 23, 1989.

In response the Nuneses filed suit in the Providence County Superior Court, appealing the board's denial of their challenge to the town of Warren's revaluation of their land, and moved for summary judgment on their appeal.[2] That motion was denied, and the appeal was assigned to the nonjury trial calendar. When reached for trial, the trial justice found that there was an insufficient administrative record upon which to base his review. Accordingly, with the consent of the parties, the trial justice ordered the case remanded to the board so that a full and complete record of its decision could be prepared. The board, after a full hearing, once again affirmed the assessor's revaluation of the Nuneses' property and the imposition of a $239,750 land use change tax.

Now in possession of a sufficient administrative record, the Nuneses once again challenged the board's decision in the Providence County Superior Court. An amended complaint was filed on April 28, 1995, which presented a new and additional challenge to the disputed tax bill. In the amended complaint, the Nuneses not only reasserted that

their land had been improperly valued but, in addition, that no land use change tax was in fact due. In support of their new contention the Nuneses contended that § 44–5–39(b)(10) provided that no land use change tax could be imposed upon farmland that was both owned by the taxpayer for five years prior to its classification and which was not withdrawn from classification until after ten years. This provision, argued the Nuneses, exempted them from any assessment of a land use change tax because their property had been both farmed and taxed as farmland since 1946 and thus the ten year program requirement had long expired by 1987, thereby exempting their property from any land use change tax.

Once again the Nuneses moved for summary judgment. The trial justice this time, however, accurately noted the impropriety of a motion for summary judgment in the setting of an administrative appeal. *See Notre Dame Cemetery v. Rhode Island State Labor Relations Board,* 118 R.I. 336, 373 A.2d 1194 (1977). Nonetheless the trial justice decided to forge ahead and address the merits of the tax-challenge dispute. In so doing, he purported to recharacterize the Nuneses' motion for summary judgment as an administrative appeal and applied the standard of review applicable to such a proceeding.

After trial on the merits of the case, the trial justice reversed the decision of the board and ordered the town to reimburse the Nuneses the full amount of the land use change tax imposed by the town tax assessor upon the land and paid by them under protest, plus interest from the time of payment.

Following the trial justice's decision, the town then moved for relief from, or vacation of the judgment of the Superior Court. In support of its motion the town contended, inter alia, that the trial justice had erred in considering the Nuneses use of their property as farmland since 1946 to conclude that they were exempt from any land use change tax in accordance with § 44–5–39(b)(10). The town asserted that the trial justice by

---

**2.** The complaint alleged Superior Court jurisdiction of their appeal from the board's decision pursuant to G.L.1956 § 44–27–6. For the relief sought by the Nuneses, § 44–5–26 provided their only available and proper means of appeal.

erroneously factoring these years into the statutory formula of § 44–5–39 had erred. The town's motion for relief from or vacation of the judgment of the Superior Court was denied after a hearing held on October 24, 1995.

The town then duly filed its appeal as well as its present petition for writ of certiorari. Certiorari was granted by this Court on August 30, 1996, and writ issued on September 4, 1996. In seeking this Court's review, the town contends that the Superior Court erred as a matter of law in finding that the Nuneses were entitled to include those years during which they had used their land as farmland prior to the actual formal classification of their property in the state program as farmland in calculating the appropriate land use change tax pursuant to § 44–5–39. We agree.

## II

### Land Use Change Tax

■ Under the Rhode Island Farm, Forest, and Open Space Program, classified land receives advantageous tax treatment by permitting valuation for tax purposes at less than full and fair cash value pursuant to § 44–5–12.[3] In order to obtain this special tax treatment, a property owner must first apply to the DEM for designation by its director of the property as either farmland, forest, or open space.[4] Once the property is designated by the director of the DEM as farmland, forest, or open space, the property owner may then apply to the appropriate city or town for classification.[5] It is that final classification that formally entitles the property owner to the advantageous tax valuation prescribed by § 44–5–12.

With this special tax treatment, however, comes a risk of a graduated percentage taxation within either a ten- or a fifteen-year period following classification. Since 1980 any land that is withdrawn from formal program classification may then become subject to a land use change tax pursuant to § 44–5–39.

The record in this case indicates that the Nuneses owned and farmed their land for more than five years prior to entering it formally into the Farm, Forest, and Open Space Program in 1984. In 1987, three years into the program, the Nuneses chose to withdraw their farmland from the program in recognition of its impending sale and change of use to planned residential unit development. Under the farmland-classification program, the withdrawal of the Nuneses' land from classification automatically rendered it subject to a land use change tax pursuant to § 44–5–39(b). The dispute in this case concerns the calculation of that tax by the town tax assessor.

The Nuneses contend that they should have received program time credits for the years during which their property had actually been used and taxed by the town as farmland, regardless of when the property was first designated and formally classified

3. Section 44–5–12 provides in pertinent part that

"[a]ll property liable to taxation shall be assessed at its full and fair cash value, or at a uniform percentage thereof, not to exceed one hundred percent (100%) * * * provided, however, that in assessing real estate which is classified as farm land, forest, or open space land in accordance with chapter 27 of this title the assessors shall consider no factors in determining the full and fair cash value of the real estate other than those which relate to such a use without regard to neighborhood land use of a more intensive nature * * *."

4. Section 44–27–3(a) provides in pertinent part that "[a]n owner of land may file a written application with the director of environmental management, for its designation by the director as farmland."

5. Section 44–27–3(c)(1) provides in pertinent part that

"[a]n owner of land designated as farmland by the director of environmental management may apply for its classification as farmland on any assessment list of the city or town where it is located by filing a written application for that classification with the assessor of the city or town not earlier than thirty (30) days before nor later than thirty (30) days after the date of assessment, except that in years of revaluation not later than thirty (30) days after written notice of revaluation or in its absence after receipt of the tax bill, and if the director has not cancelled his or her designation of that land as farmland as of a date at or prior to the date of the assessment, the assessor shall classify the land as farmland and include it as farmland on the assessment list."

as farmland in the state farmland program. If those years had been considered in calculating the applicable land use change tax, the Nuneses then claim that they would be free from any land use change tax because § 44–5–39(b)(10) provides that no land use change tax is due upon the removal of farmland property after it has been in the state program for ten years. The Nuneses assert that the pre–1984 use of their land as farmland should have been considered by the tax assessor and tacked onto the land's post–1984 program years. The trial justice agreed.

The town of Warren, on the other hand, contends that not only was the Nuneses' property never taxed by the town as farmland but its use as a farm prior to formal statutory program classification also should not be considered in calculating the applicable land use change tax. We find that the statutory scheme enacted by the General Assembly supports the town's position.

In reaching his decision, the trial justice interpreted § 44–5–39, and in particular § 44–5–39(b)(10), as providing that if a landowner owns land that has been used as farmland for five years prior to its classification as farmland under the state program, that land, if classified in the program for ten years, is then exempted from the land use change tax. The trial justice reasoned that because the Nuneses had owned and farmed their land since 1946, when they entered the land into the state program in 1984, not only had they met the five-year previous-farm-use statutory time condition set out in § 44–5–39(b) but in addition they could also tack onto that five-year period the thirty-eight years prior to 1984 so as to give the land sufficient years to claim the land use change tax exemption applicable to farmland that has been enrolled in the program for ten years.

In effect the trial justice read into the statute the ability of the Nuneses to treat those years of farming their land prior to entering it into the state program as a sort of accumulated earned credit years account to be applied to the time terms required by the state farmland-program statute. The basic fallacy in that reasoning is that nothing in

§ 44–5–39, subsections (a) or (b), allows any interpretation that would permit any property use time prior to that property's formal entry into the state program to be tacked onto any post-DEM designation and classification of the Nuneses' property as farmland. *Denault v. Fitzgerald,* 593 A.2d 453, 455 (R.I.1991).

The Nuneses as well as the trial justice misinterpreted the clear intention and purpose of § 44–5–39, subsections (a) and (b). Under subsection (a), a property owner whose property has not been used as farmland for a set period of five years prior to the property's designation as farmland is, when entered into the state's program, entitled to generous tax treatment once it obtains classification. In return for that special tax treatment, however, the property must then be continuously thereafter classified as farmland for at least fifteen years. If the land is used for another purpose, voluntarily withdrawn from the program, or sold to a new owner before the end of its fifteenth year of classification, the property then becomes subject to a land use change tax, computed on the basis of the actual number of years that the property actually remained as farmland in the state program.

Under subsection (b) of § 44–5–39, property that is owned and has been used as farmland for five years prior to the entry of that property into the state·program garners even more generous tax treatment and becomes exempt after only the tenth year of classification. In any event it is only after completion of the required number of years in the state program that the particular property is free from the land use change tax. If any property, whether subject to § 44–5–39 subsection (a) or (b), is put to a use other than its classified use or is voluntarily withdrawn from the program prior to the required ten or fifteen year term, the land use change tax pursuant to § 44–5–39 is activated and computed according to the annual program schedule set out in the statute. Additionally, if any property once enlisted into the state program is thereafter sold to a new owner, and if the new owner or owners do not apply to the local assessor for a continuance of classification pursuant to

§ 44–27–9, the property is then considered to have been voluntarily withdrawn from the program and the land use change tax automatically attaches to the land. If the new owners elect to have the property remain in the state program, the ten- or fifteen-year program-use terms then commence anew.

It is thus crystal clear that nothing in the state program permits any property owner who elects to enlist his or her property into the program to pack a lunch box filled with prior farm use years onto the property and gain not only favorable tax treatment but also, as contended here, instant exemption from the land use change tax without serving any time in the program.

### III

### Statutory Right of Appeal

■ We note in this case that the Nuneses in their complaint and appeal to the Superior Court purported to invoke that court's jurisdiction pursuant to § 44–27–6. That statutory provision we conclude from a reading of chapter 27 in title 44, clearly reveals that the appeals contemplated in section 6 pertain only to decisions made by a board of assessment review concerning the cancellation of the previous designation of property as farmland, § 44–27–3; forest land, § 44–27–4; or open space land, § 44–27–5, or the use-value assessment placed on land classified as either farmland, forest land, or open-space land. *Denault,* 593 A.2d at 454.

Neither of those two matters form the real basis for the Nuneses' complaint and appeal. They complain instead that the land use change tax imposed upon their land by the town tax assessor after it was voluntarily withdrawn by them from the farmland program was based upon an erroneous postprogram valuation of their land and, additionally, that their land was in fact exempt from any land use change tax. Accordingly the proper avenue by which they could seek appellate review of their particular alleged grievances was by virtue of § 44–5–26.

■ We have consistently determined that *except for cases brought in equity, the only avenue of appeal from an assessment of taxes upon a ratable estate is to file an appeal* pursuant to § 44–5–26. *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 322 (R.I.1996) ("the remedies delineated in § 44–5–26 shall be the exclusive remedies except that in a 'proper case' a taxpayer may invoke the equity jurisdiction of the Superior Court"); *S.S. Kresge Co. v. Bouchard,* 111 R.I. 685, 689, 306 A.2d 179, 181 (1973) ("[t]he relief which the Legislature provided for in § 44–5–26 is the exclusive remedy available for relief from an alleged illegal assessment of taxes"); *Murray v. Rockaway Boulevard Wrecking & Lumber Co.,* 108 R.I. 607, 609, 277 A.2d 922, 924 (1971) ("[r]egardless of whether a tax is attacked on grounds of overassessment or illegality, the taxing statutes provide the exclusive relief to any person aggrieved by any assessment of taxes against him by any city or town").

■ This conclusion is unavoidable in light of the plain language of § 44–5–27 which states that "[t]he remedy provided in § 44–5–26 shall be exclusive if the taxpayer owned or possessed any ratable estate at all, except that in a proper case the taxpayer may invoke the equity jurisdiction of the superior court." Where, as here, the statute is unambiguous on its face, this Court must interpret the statute according to the literal meaning of the language contained therein. *Lynch v. Neary,* 651 A.2d 1237, 1237 (R.I. 1994); *Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1135 (R.I.1992). With this caution in mind, we believe § 44–5–27 is clear in requiring a party aggrieved by an assessment of taxes to first file an appeal with the local assessor and then either to seek equitable relief or to file an appeal pursuant to § 44–5–26.

In this case the Nuneses chose neither of those options. Instead, they filed an appeal pursuant to § 44–27–6, which provides for an appeal of certain board decisions to the Superior Court. That provision does not grant a right of appeal from either an excessive valuation of unclassified lands or from an alleged illegal taxation. Those disputes are properly before the Superior Court only pursuant to an appeal authorized by § 44–5–26 or by invoking the equity jurisdiction of the Superior Court.

However, even though we do conclude that the Nuneses improperly invoked the jurisdiction of the Superior Court, we do not find that flaw to be fatal in this case. The Superior Court does have subject-matter jurisdiction over this case pursuant to the broad provisions of § 44–5–26, and the Nuneses did not offend any conditions precedent to the assertion of their claims under that provision. Therefore, the discussion here concerning the proper method of appealing an excessive or illegal land use change tax to the Superior Court is for the purpose of future guidance only.

In conclusion, we find that the town of Warren's tax assessor was correct in assessing a land use change tax upon the Nuneses' property following the withdrawal of that property from its farmland classification under the State of Rhode Island's Farm, Forest, and Open Space Program. From 1984 until 1987 the Nuneses were afforded advantageous tax valuation of their property because of its classification as farmland under that state program. Upon their premature withdrawal of that land from the program, a land use percentage change tax became due and payable. We further find that the tax assessor was correct in ignoring the property's use as a farm prior to its actual classification in the state program in calculating the appropriate amount of that tax and in calculating that amount utilizing the arm's-length selling price on the land in ensuring its full and fair cash value. Therefore, we grant the petition for certiorari and quash the judgment of the Superior Court. The papers in this case may be remanded to the Superior Court with our decision endorsed thereon.