DECISION
Before this Court is the appeal of the Plaintiff Appellant, Marsha A. Fiske ("Fiske" or "Appellant"), from a decision of the Defendant Appellee, Town of Westerly Board of Assessment Review ("Board" or "Appellee"). The Board's decision issued February 16, 2006, fixed the value of Fiske's house-site assessment at $1,001,400, and building assessment at $716,100. Fiske maintains the proper value of the house-site is $245,820 and the proper value of the building assessment is $518,056.15. Appellant filed the instant, timely, appeal to this Court on April 19, 2006. Jurisdiction is pursuant to G.L. 1956 § 44-27-6.
 I Facts and Travel
Appellant owns real property located at 55 Watch Hill Road, in the Town of Westerly, Rhode Island ("Town"), designated as Tax Assessor's Plat 127, Lot 2. The lot consists of approximately 435,600 square feet which fronts Watch Hill Road to the east and is bordered on the west by the Pawcatuck River. Since June 2, 2004, the property has enjoyed the Department of Environmental Management's designation as farmland under the Farm, Forest, and Open *Page 2 
Space ("FFOS") Act, § 44-27-1 et. seq. (the "Act").
On December 31, 2003, Charles E. Vacca ("Vacca"), Westerly's Tax Assessor, assessed Appellant's total property at a value of $2,212,300. In doing so, Vacca assigned a value of $1,513,900 to the land, and a value of $698,400 to the buildings.[1] (see Tax Assessor's Card for Lot 2, Plat 127 ("Tax Card"). As part of his assessment, Vacca, as permitted by the Department of Environmental Management ("DEM") regulations enacted pursuant to § 44-27-7, carved out a 30,000 square foot area house-site[2].See Rules and Regulations for Implementation of the Farm, Forest and Open Space Act, R.I. CODE R. 12 020 003 R. 5(n). He valued the house-site at $1,225,800. After accepting the FFOS designation for the 2004 tax year, Vacca reduced the total assessment to $1,927,500, but maintained the $1,225,800 house-site assessment and the $698,400 value he placed on the buildings. Vacca arrived at his building valuation by employing an adjusted replacement cost base rate of $192.76 per square foot on the first floor of the house and $154.19 per square foot for the finished upper story, applying lower rates to other areas of the home. See Tax Card.
Fiske appealed the December 31, 2004 assessment to Vacca on October 27, 2005. However, Vacca did not change the assessment. On December 29, 2005, Fiske appealed Vacca's decision to the Board. Fiske and her husband, Eric Fiske, ("Eric" or collectively with Appellant, the "Fiskes") appeared before the Board pro se without the assistance of an attorney or appraiser. The Fiskes presented evidence seeking to establish that Vacca disproportionately taxed their property in comparison to similarly situated properties in the Town. To support this contention the Fiskes submitted the tax cards for thirteen properties the Fiskes believed were appropriate *Page 3 
comparison properties. In addition, the Fiskes submitted maps delineating the location of those properties, and a number of letters and correspondence between the Fiskes and the Town's property tax personnel. The Fiskes also presented a chart showing all the other FFOS properties in Westerly, including the adjacent neighbors, which all had building assessments based on an $84 per square foot unadjusted replacement cost base rate.
After the appeal to this Court was filed, the Board provided the Court with an audio cassette tape recording of the proceedings below. The tape was blank. After discovery of the blank tape, both parties determined it was necessary to supplement the record upon which the Court was to base its review. The Court granted the parties' motions to supplement under § 44-27-6(c), and each provided additional evidence.
The Appellant submitted to the Court as supplemental information a formal appraisal by Raymond Lueder, ("Lueder") of Lenihan Appraisal Company. The appraisal assessed the value of a hypothetical 49,199 square foot undeveloped lot that complied with the Town's zoning requirements. Additionally, the Lueder appraised house-site overlapped most of the 30,000 square foot house-site established by Vacca. Lueder employed the comparable sales method of valuation in his appraisal.[3] The five comparable sales cited by Lueder all fell within a range of $230,000, to $310,000. Importantly, the Lueder appraisal specifically "chose to include comp[arable sale] # 3 because it was the only property with a distant or limited water view and because it was located relative (sic) far away from the beaches." (Appraisal at 3.) After selecting the appropriate comparable sales, adjustments "were made for location, view, and differences in access to public utilities."Id. Properties located in beach communities and resort neighborhoods were adjusted downward because they were "superior."Id. In contrast, *Page 4 
properties "purchased in the early stages of neighborhood development" were adjusted upward "due to slight inferiority."Id. Ultimately, Lueder concluded the proper appraisal for the Fiske's base lot was $275,000.
To supplement the record, the Appellee submitted a number of materials including: a letter, pictures, a "Statement of Fact" purporting to explain the rational employed by Vacca in assessing the Appellant's property, and a copy of the tax card for one of the other properties in Town, the Paul Myer's Trust, which showed the base lot valuation of that property was not reduced due to its FFOS designation. In his "Statement of Fact," Vacca described Fiske's property and explained he interpreted state law to require "the assessor to assess the base lot at a fair and full cash value, excluding land used for farming purposes. It is incumbent upon the Assessor to recognize that the amenities of the base lot still exist; extensive water views and access to the river for boating and bathing." (Statement of Fact at 1.) Vacca explained he applied "the same guidelines" for 7 Niantic Avenue, another property in Town with a FFOS designation.[4] He explained 7 Niantic Avenue had "extensive" water frontage, which he assigned a base lot value in excess of $7,500,000. The letter also stated Vacca did not define a base lot "by a metes and bounds description . . . but rather by its inherent rights similar to all other waterfront properties. The open space designation does not preclude the owner from enjoying the extensive water views, access to deep water for bathing and boating, or the privacy that nearly ten acres affords." Id. at 2. *Page 5 
 II Standard of Review
This Court's review of the Board's decisions is governed by § 44-27-6(c), which provides in pertinent part that:
 The court shall not substitute its judgment for that of the board of assessment review, or city or town council, as to the weight of the evidence on question of fact. The court may affirm the decision of the board of assessment review, or city or town council, or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the board of assessment review, or city or town council, by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This standard of review is analogous to the standard applied by this Court in reviewing administrative agency decisions. See Munroe v.Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999) (noting that standard of review for planning board of appeal decisions is the same as the "traditional judicial review standard that is applied in administrative-agency actions"). Accordingly, this Court "does not consider the credibility of witnesses, weigh the evidence, or make it own findings of fact." Id. The Superior Court's review is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Nickerson V. Reitsma,853 A.2d 1202, 1205 (R.I. 2004) (quoting BarringtonSchool Comm. v. State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)). *Page 6 
Legally competent evidence is defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Town of Smithfield v. Churchill Banks Co.,LLC, 924 A.2d 796, 806 (R.I. 2007) (quoting Foster-GlocesterReg'l School Comm. v. Board of Review,854 A.2d 1008, 1012 (R.I. 2004)).
Determinations of law, however, "are not binding upon [the Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." Dep't ofEnvtl. Mgmt. v. Labor Relations Bd.,799 A.2d 274, 277 (R.I. 2002) (citing Carmody v. Rhode IslandConflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986)). Thus, "[a]lthough factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law [subject to] [] de novo review."Rossi v. Employees Ret. Sys. of Rhode Island,895 A.2d 106, 110 (R.I. 2006) (citing In re Advisory Opinion tothe Governor, 732 A.2d 55, 60 (R.I. 1999)).
 III Analysis A Jurisdiction
As a preliminary matter, Appellee moves this Court for a judgment on the pleadings. However, an administrative appeal is not a civil action, but is an appellate proceeding. See Mauricio v. ZoningBd. of Review, 590 A.2d 879, 880 (R.I. 1991). Accordingly, because appellate review is limited to a review of the record produced at the administrative tribunal, motions for summary judgment or judgment on the pleadings are not proper in the context of an administrative appeal. See Notre Dame Cemetery v.State Labor Relations Bd., 118 R.I. 336, *Page 7 
338, 373 A.2d 1194, 1196 (1977). However, because Appellee raises a question about the subject matter jurisdiction of this Court to entertain this appeal, the Court will treat the Appellee's "motion for judgment on the pleadings" as a supplemental brief and address the merits of the argument.
Specifically, Appellee contends this Court is without jurisdiction to hear this appeal because Appellant brought the appeal under § 44-27-6[5], the FFOS appellate review statute rather than G.L. 1956 § 44-5-26[6], the general tax appeal statute. The general rule is that "except for cases brought in equity, the only avenue of appeal from an assessment of taxes upon a ratable estate is to file an appeal pursuant to § 44-5-26." Nunes v.Marino, 707 A.2d 1239, 1244 (R.I. 1998) (citing Wickes AssetMgmt., Inc. v. Dupuis, 679 A.2d 314, 322 (R.I. 1996) ("the remedies delineated in § 44-5-26 shall be the exclusive remedies except that in a `proper case' a taxpayer may invoke the equity jurisdiction of the Superior Court")). However, when an appellant seeks *Page 8 
to challenge "decisions made by a board of assessment review concerning the cancellation of the previous designation of property as farmland, § 44-27-3; forest land, § 44-27-4; or open space land, § 44-27-5, or the use-value assessment placed on land classified as either farmland, forest land, or open-space land" then the correct avenue of appeal is via § 44-27-6.
Appellee contends this appeal only asserts a challenge to the value of the house-site because the parties agree the assessment of the farmland portion of the Fiskes' lot was proper. Under the regulations promulgated by the DEM pursuant to the FFOS, a house-site is by definition excluded from classification as FFOS property.[7] Thus, Appellee argues, because the challenge is to the value assigned to the house-site, and not to the value of the portion of the land designated as farmland, this appeal may only be brought under the general tax appeal statute, § 44-5-26. Because § 44-5-26 requires an appeal to be taken within thirty days of the board's decision; and the instant appeal was filed beyond thirty days, Appellee argues this appeal should be dismissed.
When engaging in statutory interpretation this Court's goal "is to give effect to the purpose of the act as intended by the legislature." Barrett v. Barrett,894 A.2d 891, 897 (R.I. 2006). Were the Court to accept the Appellee's interpretation of § 44-27-6 as allowing appeals of a joint assessment only as to the FFOS portion of the assessment, the result would be a procedural quagmire. Appellants seeking to challenge a single assessment would be required to file two separate appeals, one within thirty days of the board's decision, and a second within ninety days. These appeals would then proceed, one based on the de novo trial type hearing provided for in § 44-5-29 ("the petition is subject to all provisions of law as to time for pleading, *Page 9 
assignment day, and all other incidents applicable to an action at law originally commenced in the superior court"), including even the possibility of a jury under § 44-5-30. Meanwhile, the twin appeal would proceed through the Superior Court under the traditional judicial review standard applicable to administrative appeals and limited to the evidence contained in the record under § 44-27-6. However, it is only through the legal fiction created by the FFOS that the farmland exists independently from the house-site, for all other purposes, the farmland and the house-site are one parcel. By acquiring an FFOS designation, a homeowner forfeits the right to develop the FFOS designated land; and the owner cannot sell the house-site without the farmland or vice-versa. Although the farmland and the house-site may be assessed separately, the lot nevertheless remains one legally recognized parcel. Further, a twin appeal procedure requires the owner of one parcel of land to potentially bear the burden and expense associated with appealing two tax assessments. Requiring an owner to proceed with two separate tax appeals from the assessment of one parcel places an undue burden on the owner, and the Court will not ascribe such a nonsensical intent to our General Assembly. When construing statutes, this Court will not interpret statutory schemes in such a manner as to reach an absurd result. See Peck v. Jonathan MichaelBldrs., Inc., 940 A.2d 640, 643 (R.I. 2008).
Moreover, "[i]t is axiomatic that when a specific statute clashes with a general statute, and the two cannot be harmonized, the specific statute takes precedence." Warwick Hous. Auth. v.McLeod, 913 A.2d 1033, 1039 (R.I. 2007). As such, faced with the general tax appeal statute and the particularly specific FFOS statute, the Court will proceed under the FFOS appellate statute because it is more tailored to the controversy at bar. Accordingly, the Court finds that when land including both FFOS and non-FFOS designations is assessed simultaneously, appeals seeking to challenge that assessment are properly brought under § 44-27-6. Therefore, this Court *Page 10 
finds the instant appeal is properly before the Court, and that this Court has jurisdiction to hear the appeal.
 B Substantial Evidence
Appellant contends the Board's conclusion affirming Vacca's assessment is clearly erroneous in view of the reliable, probative, and substantial evidence in the record. Specifically, Appellant contends Vacca's assessment methodology is unascertainable because the record is devoid of any evidence indicating how Vacca arrived at his assessment of the Fiske property. In response, the Board contends its decision and Vacca's assessment are supported by the evidence in the supplemented record.[8]
In Nos Limited Partnership v. Booth,654 A.2d 308, 310 (R.I. 1995), our Supreme Court outlined the appropriate procedure for challenging a tax assessment:
 In any tax assessment challenge, the assessor must first present his or her conclusion as to fair market value and the procedure used to arrive at such fair market value of the subject property. If the taxpayer challenges either the legality of the assessment or claims that the assessor used an inappropriate fair market value of the subject property, the burden will be on the taxpayer to present evidence of fair market value. Nos Ltd., 654 A.2d at 310.
Thus, once the assessing officer satisfies his burden of production with respect to valuation and methodology, "tax assessors are entitled to a presumption that they have performed their acts *Page 11 
properly until the contrary is proven." Harvard Pilgrim HealthCare of New England v. Rossi, 847 A.2d 286, 292 (R.I. 2003) ("Harvard Pilgrim I"). Further, at this stage, "the taxpayer in a tax assessment challenge bears the burden of proving that the assessor's valuation exceeds fair market value" and must satisfy this burden with her own competent evidence as to value.Harvard Pilgrim Health Care of New England, Inc. v. Gelati,865 A.2d 1028, 1035 (R.I. 2004) ("Harvard Pilgrim II").
To satisfy this burden of proof the value of real estate should generally "be established by expert witnesses familiar with values in the locality where the real estate is situated." Wordell v.Wordell, 470 A.2d 665, 667 (R.I. 1984). No definitive method exists when reviewing real estate tax assessments, but our Supreme Court has commanded that "wherever feasible" values should be computed "on the basis of comparable sales cited by an expert witness who has laid a prior foundation consisting of the reasons or factors upon which he has relied in arriving at his opinion."Id. Although these standards only govern explicitly in the case of a petition to this Court for a reduction in assessment under § 44-5-26, the Court finds them instructive in delineating the scope of the substantial evidence review required under § 44-27-6.
In the case at bar, although Vacca produced his conclusion as to fair market value, he failed to provide any evidence explaining or indicating "the procedure used to arrive at such fair market value of the subject property" DeBourgknecht v. Rossi,798 A.2d 934, 937 (R.I. 2002) (quoting Nos Ltd., 654 A.2d at 310)." Although the assessor, in determining fair market value, "is not bound by any particular formula, rule or method to ascertain the fair market value of real estate," FerlandCorp., 626 A.2d at 215 (quoting Kargman v. Jacobs,113 R.I. 696, 704, 325 A.2d 543, 547-48 (1974) (Kargman I)), the assessor must at least produce evidence he has relied on some reasonably reliable assessment methodology. Nos Ltd.,654 A.2d at 310. Numerous *Page 12 
methods of assessment have met with judicial approval. See e.g.Harvard Pilgrim II,865 A.2d at 1035 (acquisition cost minus depreciation); KargmanI,113 R.I. at 704, 325 A.2d at 547-48 (1974) (reproduction cost);Kargman v. Jacobs,122 R.I. 720, 731, 411 A.2d 1326, 1332 (1980) (capitalization of income).
Here, without a transcript, the only potential evidence of the assessor's procedure is Vacca's letter containing his "Statement of Fact." However, a closer examination of the letter reveals nothing more than general statements of the law governing tax assessors coupled with general principles of assessment. For example, Vacca states an assessor must "assess the base lot at a fair and full cash value, excluding land used for farming purposes." Yet such a statement merely references an assessor's obligations under the FFOS and DEM regulations, but fails to shed any light on how this assessment is to be accomplished. Further, he states, "[i]t is incumbent upon the Assessor to recognize that the amenities of the base lot still exist; extensive water views and access to the river for boating and bathing" and defines a base lot not "by a metes and bounds description as the owner asserts, but rather by its inherent rights similar to all other waterfront properties." Although these statements begin to provide an outline beyond a mere tautological recital of the statutory standards, they still fall far short of producing a method for carrying out such a valuation. Similarly, the statement that "[t]he open space designation does not preclude the owner from enjoying the extensive water views, access to deep water for bathing and boating, or the privacy that nearly ten acres affords[]" provides a mere generic description of the potential uses of the property. The statement does not elicit competent evidence as to the procedure employed by Vacca in reaching his value determination. Moreover, Vacca's statement that he used the same "guidelines" for 7 Niantic does not clarify what procedure those "guidelines" encompassed. These recitations of fact and conclusory statements *Page 13 
of law are insufficient to allow a trained assessor to reproduce or comprehend the specific method by which the assessor reached his conclusion.
Moreover, the record is devoid of any tax cards or descriptions of properties the assessor found comparable to the Fiske property. As part of the evidence submitted to supplement the record, the Board submitted the tax card for 7 Niantic Avenue. However, the card was included only to show the assessor had consistently applied his understanding of the FFOS statute in Westerly, but does not assert the property is comparable to the Fiske property. Finally, the evidence submitted also does not contain any information or a list of attributes on which the assessor may have based a statistical valuation. If this case is as the Appellee put it in its final brief "all about the comps," Appellee must lose this appeal because of the complete absence of credible evidence indicating which "comps" Vacca based his assessment of the Fiske property on. (Appellee's Br. at 2.)
Conversely, the Appellant provided the Court with substantial evidence on which to base a decision to grant her requested relief. Appellant submitted the tax cards of twelve different properties she believed were comparable to her own. Under Rhode Island law, "all real property subject to taxation shall be assessed at its fulland fair cash value, or at a uniform percentage of its value, not to exceed one hundred percent (100%), to be determined by the assessors in each town or city." Section 44-5-12 (emphasis added). As a result, tax assessors are statutorily bound to assess any taxable property "at its full and fair cash value." Id. Thus, these tax cards represent a reliable proxy for the fair market value a comparable sales approach should affix to these properties.
In addition to the tax cards, Appellant introduced charts and maps showing the location of these properties in relation to her own. Further, Appellant has presented substantial evidence *Page 14 
in support of her assertion she was overtaxed on the value of the lot's improvements. Specifically, Appellant produced charts showing Vacca assessed the improvements on her lot with replacement costs far in excess of the $67 to $84 per square foot he assigned to comparable buildings on other non-waterfront properties. Taken together, these maps, charts and tax cards permit a reasonable fact finder to conclude her lot had been excessively taxed.
Accordingly, because the record is devoid of any evidence establishing the procedure or methodology used to arrive at a value, this Court finds the Board's decision clearly erroneous in view of the evidence in the record.
 C The FFOS
Appellant also contends Vacca's methodology in assessing the contours of her estate constitutes an error of law. Specifically, Appellant contends Vacca's methodology of transferring the value from the base lot to the house-site, and taxing the house-site as waterfront property is invalid because it defeats the purpose of the FFOS Act. In response, the Board contends the assessment of the house-site as waterfront property is not only permitted, but required under applicable state law.
The Court will first examine the statutory framework under which this question arises. As previously noted, in Rhode Island "all real property subject to taxation shall be assessed at its full and fair cash value, or at a uniform percentage of its value." Section 44-5-12. However, to ease the economic pressure to develop land, the General Assembly has created the FFOS Act. Through the Act, landowners can apply for certification as farmland, forest land, or open space.See sections 44-27-3, 44-27-4, 44-27-5. Upon receipt of a certificate, the landowner then may apply for tax classification as such, and the tax assessor if in agreement with the classification, *Page 15 
"shall classify the land as [FFOS] land and include the land as [FFOS] land on the assessment list." Id. (emphasis added). Should the assessor see fit to deny the classification, the Act permits an aggrieved landowner to appeal the denial to the Board.Id. The Rhode Island General Assembly has declared the policy objectives behind implementation of the Act as follows:
 (1) That it is in the public interest to encourage the preservation of farm, forest, and open space land in order to maintain a readily available source of food and farm products close to the metropolitan areas of the state, to conserve the state's natural resources, and to provide for the welfare and happiness of the inhabitants of the state.
 (2) That it is in the public interest to prevent the forced conversion of farm, forest, and open space land to more intensive uses as the result of economic pressures caused by the assessment for purposes of property taxation at values incompatible with their preservation as farm, forest, and open space land.
 (3) That the necessity in the public interest of the enactment of the provisions of this chapter is a matter of legislative determination. Section 44-27-1.
In order to advance these policy objectives, state law provides that once a certificate has been granted "[i]n assessing real estate which is classified as farm land . . . the assessors shall consider no factors in determining the full and fair cash value of the real estate other than those which relate to that use without regard to neighborhood land use of a more intensive nature" Section 44-5-12(a)(2). Enacted as part of the Act, § 44-27-7, authorizes the DEM to promulgate rules and regulations for the implementation of the act. Under the regulations, assessors are permitted to establish a house-site equivalent either "to the zoned lot size or one acre, whichever is smaller containing a house, and land under and surrounding dwellings or devoted to developed facilities, such as tennis courts, pools, etc., related to the use of the residence." Rules and Regulations for Implementation of the Farm, Forest and Open Space Act, R.I. CODE R. 12 020 *Page 16 
003 R. 5(n).[9] The house-sites do not qualify as farmland and are, therefore, excluded from the benefits of § 44-5-12(2).
Appellant argues the decision of the Board is affected by error of law because Vacca's methodology, which taxed the house-site as waterfront property, transferred the value of the total site to the house-site defeating the purpose of the FFOS Act. Accordingly, the Appellant argues Vacca's statement that he must "assess the base lot at a fair and full cash value, excluding land used for farming purposes," is intractably at odds with his belief that "[i]t is incumbent upon the Assessor to recognize that the amenities of the base lot still exist; extensive water views and access to the river for boating and bathing," because "[t]he open space designation does not preclude the owner from enjoying the extensive water views, access to deep water for bathing and boating, or the privacy that nearly ten acres affords." (Statement of Fact 1-2.) In response, Appellee contends the assessor's methodology as expressed above is consistent with its obligations under the FFOS Act.
When engaging in statutory interpretation this Court's goal "is to give effect to the purpose of the act as intended by the legislature." Barrett,894 A.2d at 897 (internal citation omitted). Where a statute is clear and unambiguous, this Court interprets statutes giving effect to their plain and ordinary meaning. Rhode Island DepositorsEcon. Prot. Corp. v. Bowen Court Assoc.,763 A.2d 1005, 1007 (R.I. 2001). However, where a mechanical application produces an absurd result or would defeat the legislative intent behind the enactment, this Court must apply *Page 17 
the statute so as to effectuate the act's purpose. Skaling v.Aetna Ins. Co., 742 A.2d 282, 290 (R.I. 1999).
In order to determine whether the transfer of the value from the base lot to the house-site is required for the assessor to satisfy his obligations under § 44-5-12, a deeper examination of valuation principles is necessary. When interpreting ambiguous provisions of Rhode Island law, our Supreme Court has often turned to federal precedents for guidance. See e.g., Bd. of Trustees,Robert H. Champlin Memorial Library v. Rhode Island State LaborRelations Bd., 694 A.2d 1185, 1189 (R.I. 1997). In the context of federal estate taxation, as with Rhode Island property tax, the value of real estate is often a contentious matter with no statute specifically describing how value is to be assessed. As such, a large body of case law and regulations have developed that can assist courts in determining the components of real estate value. Stefan F. Tucker, author of the leading treatise TaxPlanning For Real Estate Transactions summarizes the approach adopted by the Internal Revenue Service:
 "The [r]egulations define `value' as `fair market value,' which in turn is defined as `the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.' Regs §§ 20.2031-1(b) and 25.2512-1. Fair market value is interpreted to mean the `highest and best use' of the property being valued on the valuation date. Estate of Pattison v. C.I.R., T.C. Memo. 1990-428, 1990 WL 112409 (1990); see also Estate of Juden v. C.I.R., 865 F.2d 960 (8th Cir. 1989). The highest and best use of the property is not based on the use to which the property is actually put at the time of valuation, but on that use to which the property could be put in order to produce its greatest return or benefits. See Estate of Feuchter v. C.I.R., T.C. Memo. 1992-97, 1992 WKL 26053 (1992). For example, land that is exclusively used for agricultural purposes at the time of the transfer but that has residential development potential generally must be valued at its residential development price rather than the lower agricultural value. See Estate of Feuchter v. C.I.R., T.C. Memo. 1992-97, 1992 WKL 26053 *Page 18 
(1992)." Stefan F. Tucker, Tax Planning For Real Estate Transactions, § 28:12
It follows that land that would be more valuable as two or more subdivided properties, or as a hotel or other resort use — though currently used only as a single family residence — must be taxed based on the development potential of the parcel and not based on current use.[10] The benefit provided by the FFOS Act is to invert these principles of valuation and require the assessor to value the land not based on its highest and best development potential, but on its use as agricultural land.See section 44-5-12. Accord Golder v. Dep't of Revenue,State Bd. of Tax Appeals,123 Ariz. 260, 265, 599 P.2d 216, 221 (1979) (The difference between market value and the value of land for agricultural purposes represents the price buyers have to pay for "future anticipated property value increments." However, because "current use" must be considered in assessing property, an agricultural user is taxed only on the land's value for agricultural purposes, with excess being excluded.). Moreover, implicit in the FFOS statutory scheme is the General Assembly's recognition that FFOS properties often contain houses that draw on the resources of a town, and accordingly, it sought to protect towns by ensuring owners of FFOS land did not enjoy a conservation related windfall from the developed portion of the property.
The FFOS Act seeks to balance these competing concerns. First, the Act limits a tax assessor's ability to consider any aspects of a property's use other than the designated FFOS category. Section 44-5-12(a)(2). This is accomplished by limiting the size of the area an assessor may exclude from the FFOS land, and by limiting the way the use is categorized. Thus, *Page 19 
for example, an assessor may consider a property's agricultural value only if it enjoys a farmland classification. Then, in recognition that the FFOS designations might severely hamper municipalities' ability to raise tax revenue, house-sites sized the smaller of a zoned lot size or 30,000 square feet are permitted to be carved out. These house-sites can be freely taxed on their residential use. In essence, the FFOS Act works to reduce the pressures of development by shrinking the size and scope of land that is subject to normal tax burdens. Thus, because the goal of the FFOS Act is to "prevent the forced conversion of farm, forest, and open space land to more intensive uses as the result of economic pressures caused by the assessment for purposes of property taxation at values incompatible with their preservation," the FFOS Act represents an attempt to reduce the marginal difference between a property's current use as agricultural land and its potential developmental use. Section 44-27-1(2).
Therefore, when assessing the value of a house-site, an assessor may not attribute the geographical features of the land subject to FFOS designation to the house-site, unless those features fall within the bounds of the house-site drawn by the assessor. A contrary finding renders the core operative provision of the FFOS useless because an assessor would not be limited to considering only the agricultural use of the farmland. Similarly, if an assessor counts the house-site as waterfront property, he subjects the portion of the land benefiting from the FFOS designation to double taxation. Moreover, such a reading renders the provisions seeking to preserve the zoned lot size or 30,000 square foot lot in conjunction with any improvements a nullity.
If assessors are free to attribute the FFOS features of land to the house-site, no provision preserving the assessor's right to tax a zoned lot or 30,000 square feet at full market value is necessary. Although the FFOS does not require assessors to value the house-site in a vacuum, *Page 20 
the regulations only permit the area carved out as part of the house-site to be taxed at its full value, which includes the features inherent in that lot. However, all other land including water frontage subject to the FFOS classification cannot be considered other than for its use as farmland. Section 44-5-12(a)(2). Simply put, the assessor cannot attribute the waterfront frontage of the farmland to the house-site, because the house-site does not have any waterfront frontage. As a result, an assessor is statutorily precluded from considering the waterfront status of the farmland. Id.
Moreover, Vacca's assessment method of transferring the value lost in the farmland to the house-site undermines and frustrates the purposes of the FFOS. This method reduces or eliminates the tax benefits the legislature sought to provide to incentivize the preservation of open space. In obtaining an FFOS designation for her lands, Appellant forfeited the right to develop her land to its fullest extent, a right that prior to the designation constituted a portion of the property's value. The Town may not now tax her land as though she retained those rights. Accordingly, because Vacca's assessment method impermissibly attributes to the house-site value lost in the FFOS classified property, the assessment frustrates the purpose of the FFOS. Thus, the Court finds the Board's decision upholding the assessment method was made in violation of law and contrary to the provisions of the FFOS.
 IV Remedy
Having found the Board's decision unsupported by substantial record evidence and effected by error of law, it falls to this Court to determine the appropriate remedy. Under § 44-27-6(c), the court may either "remand the case for further proceedings, or may reverse or modify the decision" of the Board. Where it is possible a municipal board or administrative agency has *Page 21 
made findings of fact and based its decision on the requisite legal criteria, though those findings are not reflected in the record, remand is appropriate. See East Greenwich Yacht Club v. CoastalRes. Mgmt. Council,118 R.I. 559, 568, 376 A.2d 682, 687 (R.I. 1977). However, when the court can fashion an appropriate remedy, courts are cautious to avoid a remand that gives a board a second chance to make findings which can be unduly prejudicial to appellants by causing unreasonable delay and further litigation expenses. See,e.g., Roger Williams College v. Gallison,572 A.2d 61, 62-63 (R.I. 1990) (recognizing that although the Superior Court has "the authority to remand a case to the zoning board of review for further proceedings[,]" such remand "should not be exercised in such circumstances as to allow remonstrants another opportunity to present a case when the evidence presented is initially inadequate . . ." rather "[t]he remand for further proceedings should be based upon a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking the remand").
Here, the Appellant produced evidence providing the assessed value of the Fiske property she deemed appropriate based on properties she contends are similar. Although not submitting any properties it deems comparable, the Board does not agree the properties submitted by the Appellant are comparable. In addition, the Appellant also submitted a private appraisal to the Court. Although the appraisal took care to include at least some comparable properties that enjoyed water views, it is unclear the extent to which Leuder's appraisal accounts for the easement like access the house-site enjoys to the river that lies beyond the Fiskes' agricultural lands. Without sufficient information to determine the methodology employed by Vacca in this case, it is impossible for this Court to compute an exact valuation of the Appellant's house-site in accordance with the requirements of the FFOS and DEM regulations elucidated above. Further, without knowing how the assessor made his valuation on the tax cards provided by the *Page 22 
Appellant, this Court is not capable of employing the same methodology to arrive at a definitive valuation of the Fiske property. Thus, remand to the Board for further consideration consistent with the guidelines outlined below is appropriate.
In making its determination, the Board may consider the property's sweeping water views, indeed Appellant concedes as much. Additionally, because the FFOS designation applies only to the portion of the shore owned by the Fiskes — and not to the portion of the shore held in common trust by the State of Rhode Island — it is appropriate for the assessor to consider the proximity of the water access. See Greater Providence Chamber ofCommerce v. Rhode Island, 657 A.2d 1038, 1041 (R.I. 1995) ("the state holds title to all land below the high-water mark in a proprietary capacity for the benefit of the public.")[11]. As a result, the best manner to conceive of the Fiskes' ownership of the farmland with river frontage is as an easement for water access.See Allen v. Allen,32 A. 166, 166, 19 R.I. 114, 114 (1895) (The private rights which a riparian proprietor on tide water has to the shore between the high and low water mark are in the nature of franchises or easements, the fee of the shore being in the State as trustees for the public.). The owner of a landlocked tenement with an easement for water access may freely pass over the burdened parcel in order to access the water frontage. However, the owner's parcel is not treated as having river frontage simply because the owner can access the water over a burdened parcel. Similarly, the Fiskes are free to traverse the farmland with the FFOS designation to access the water frontage, but this access cannot attribute "river frontage" to the house-site simply because the Fiskes have access to it. Thus, an assessor is free to consider the value of the water access *Page 23 
when assessing the house-site, and the sweeping water views. However, an assessor cannot transfer the features of the FFOS farmland, and the water frontage it contains, onto the house-site simply because the two abut.
The Court is mindful it is entirely possible a lot possessing these rights will, in the final analysis, appraise at a value very close to that of a lot containing actual river or water frontage. Here, where any river or water frontage is contained in the designated FFOS lands, and not within the carved out house-site, the assessor may not assess the house-site as though it possesses such frontage. As Appellant argues in her brief, to adopt the contrary reasoning "would justify classifying an oasis in the middle of the desert as waterfront property only because the desert at some point meets the sea." (Pl.'s Sup. Br. 4.) Accordingly, the Appellant's appeal is sustained; and the case is remanded to the Board for a determination of an appropriate valuation of the lot using a defined assessment methodology consistent with the guidance contained in this opinion.
 V Conclusion
Based on the foregoing, the decision of the Board affirming in part and denying in part the Appellant's appeal from Vacca's assessment is vacated and remanded to the Board for reconsideration in light of this Decision. After a review of the evidence, the Court finds the Board's decision was not supported by the evidence on the record; and is, therefore, erroneous, arbitrary and capricious, constituting an abuse of discretion. Substantial rights of the Appellant have been prejudiced.
Counsel shall submit an appropriate order for entry in accordance with this Decision within ten (10) days.
[1] The buildings consist of the house as well as two smaller buildings.
[2] A house-site is defined as, "the zoned lot size or one acre, whichever is smaller containing a house, and land under and surrounding dwellings or devoted to developed facilities, such as tennis courts, pools, etc., related to the use of the residence."
[3] The comparable sales method determines the value of a property by reference to sales of similar properties in the nearby neighborhood, or in similar neighborhoods with similar prices.
[4] The "Statement of Fact" provides the following, "The Assessor has applied the same guidelines for 7 Niantic Avenue, a 9.73-acre parcel with extensive frontage of water frontage and a baselot assessment that exceeds $7,500,000, and the remaining land designated as open space."
[5] 44-27-6 provides in pertinent part:
 (a) Any person or persons jointly or severally aggrieved by a decision of the board of assessment review, or city or town council, may appeal to the superior court for the county in which the municipality is situated by filing a complaint stating the reasons of appeal within ninety (90) days after the decision has been filed in the office of the board of assessment review, or city or town council . . .
 (c) The review shall be conducted by the superior court without a jury. The court shall consider the record of the hearing before the board of assessment review, or city or town council, and if it appears to the court that additional evidence is necessary for the proper disposition of the matter, it may allow any party to the appeal to present that evidence in open court, which evidence along with the record constitutes the record upon which the determination of the court is made.
[6] 44-5-26 provides the methodology to file a tax appeal to the Superior Court. The timeframe to file an appeal with the Superior Court is provided by reference to a form which must be filed to properly perfect an appeal. Under § 44-5-26(b), the form provides in pertinent part:
 Any person still aggrieved on any ground whatsoever by an assessment of taxes against him or her in any city or town may, within thirty (30) days of the tax board of review decision notice, file a petition in the superior court for the county in which the city or town lies for relief from the assessment, to which petition the assessors of taxes of the city or town in office at the time the petition is filed shall be made parties respondent, and the clerk shall thereupon issue a citation substantially in the following form:
[7] The DEM regulations define "farmland" as any tracts of land, "exclusive of the house-site," which meet certain conditions and have a current Department of Agriculture conservation plan.See Rules and Regulations for Implementation of the Farm, Forest and Open Space Act, R.I. CODE R. 12 020 003 R. 5(k).
[8] The record as certified and supplemented consists of the FFOS application, several exhibits, the Board's decision, a "Statement of Fact" by the assessor, and a private appraisal. The Board's decision reads simply "The Board of Assessment Review has carefully examined the pertinent material submitted and concluded an assessment reduction is justified. An abatement will be forthcoming upon approval by the Town Council." Although the oral testimony presented at the hearing before the Board was supposed to be recorded, the tape that supposedly contained the recordings was blank. As such there is no transcript. Undeterred by the absence of a transcript of the Board's hearing both parties agree the matter is ready for appellate review. Based on the parties' insistence the record is sufficient for review, the Court will proceed. SeeCoupe v. Zoning Bd. of Review of City of Pawtucket,104 R.I. 58, 59, 241 A.2d 821, 822 (R.I. 1968) (certified record consisting of the application, several exhibits, and the Board's decision but not a transcript of the Board hearing sufficient to permit judicial review).
[9] Appellant also takes issue with the manner is which Vacca draws her house-site. Specifically, she claims the house-site — though drawn in such a manner that it would violate the zoning ordinance were it a zoned lot because it fails to provide sufficient frontage on Watch Hill Road — is taxed as though it conforms to the Town's zoning requirements. Yet, Appellant fails to indicate how, in drawing the house-site as he did, Vacca prejudiced her rights or failed to adhere to the Act. More to the point, the Fiskes' property enjoys a designation as farmland. Nothing in the text of § 44-27-2(1), defining the property that constitutes farmland, requires that a house-site conform to the zoning requirements of the community in which it is located. In the absence of such an explicit requirement, the Court finds that the method of drawing the boundaries of a house-site is left to the discretion of the Town Assessor. See Ferland Corp.,626 A.2d at 215.
[10] Presumably, the development of a parcel is constrained by the transaction costs involved in removing or converting the existing use to the highest and best use of the parcel, and by the imposition of zoning and subdivision regulations on the list of available highest and best uses. In determining the extent to which this constraint affects value, the assessor might be required to consider the ease with which a particular property may be entitled to obtain a variance or related relief. Although these questions are legal in nature, the answers are relevant because of their potential effect on the value of the property. Thus, if supported by competent evidence, determinations regarding these factors remain vested in the sound discretion of the assessor.
[11] The Pawcatuck River is one of Rhode Island's major waterways and creates a natural border between Rhode Island and Connecticut. It flows generally west to southwest for approximately thirty miles before emptying into the Atlantic Ocean. Rivers are subject to the public trust doctrine in Rhode Island as a body of water affected by the tide. See e.g., Greater Providence Chamber ofCommerce, 657 A.2d at 1041 (noting the regulation of tidal land in Rhode Island must be viewed in the context of the public trust doctrine in a case involving the Providence River); seealso Joesph K. Angell, Angell on TideWaters, 61 (1826) (noting a navigable river is considered an arm of the sea).